**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

JIQIN YANG                                              CIVIL ACTION NO. 25-1962

                                                        SECTION P

VS.

                                                        JUDGE TERRY A. DOUGHTY

WARDEN JACKSON PARISH                                   MAG. JUDGE KAYLA D. MCCLUSKY
CORRECTIONAL CENTER, ET AL.

**REPORT AND RECOMMENDATION**

Petitioner Jiqin Yang,[1] a detainee at Jackson Parish Correctional Center ("JPCC") in the

custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and

Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas

corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. #s 7, 16].  For reasons

that follow, the Court should grant Petitioner's request for release from detention.

**Background**

Petitioner "is a native and citizen of The People's Republic of China."  [doc. # 1, p. 12].

He entered the United States "without inspection at the U.S.—Mexico border on or about

December 15, 1988."  *Id.* at 13.  On March 31, 1998, an immigration judge granted Petitioner

"voluntary departure, with an alternative order of removal to China."  *Id.* at 14.  Petitioner

appealed to the Board of Immigration Appeals which, on June 28, 2002, upheld the immigration

---

[1] Petitioner's "A-Number" is 029788298.

[2] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636, and the standing orders of the Court.

judge's orders.  *Id.*  Petitioner "remained in the United States after the order of deportation became final and has not departed the country since that time."  [doc. # 1, p. 14].

On March 20 or 25, 2025, ICE took Petitioner into immigration custody.  [doc. #s 1, p. 15; 7, p. 2].

Petitioner filed the instant petition on approximately December 8, 2025.  [doc. # 1]. Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), he first claims that his "removal has still yet to be effectuated, with no likelihood it will be in the foreseeable future given no travel documents have been issued by China despite apparent ongoing requests."  *Id.* at 22.  "[He] has fully cooperated with all efforts to effectuate his removal . . . ."  *Id.* at 16.  He adds, "Absent some explanation for why a travel document would be forthcoming in [his] case, there is nothing to suggest he would be issued one after fleeing China without permission almost 40 years ago, especially where, with no 'exceptions,' the embassy requires original identity documents to issue a passport that would allow entry."  *Id.*

Petitioner next claims that he is not receiving adequate medical care at JPCC.  [doc. # 1, p. 25].  He writes, *inter alia*, that he lacks his heart medication, that he lacks regular monitoring of his heart condition, and that therefore his continued detention is increasing his risk of a heart attack "or stroke by the day . . . ."  *Id.* at 29-30.

Petitioner seeks immediate release from custody.  [doc. # 1, p. 7].

As to Petitioner's *Zadvydas* claim, Respondents argue that  Petitioner's statements are conclusory and speculative, and he does not "prove there is no likelihood of removal in the reasonably foreseeable future" because he "does not offer specifics in his petition about why his removal is not reasonably foreseeable beyond the allegation that no travel document has been issued by China despite apparent ongoing requests."  [doc. # 7, p. 4].

Respondents provide evidence demonstrating: (1) Enforcement and Removal Operations ("ERO") submitted  a travel document request on May 30, 2025; (2) on June 27, 2025, ERO "requested an update on the status of Petitioner's travel document request"; (3) On November 21, 2025, ERO requested an update on the travel document request; and (4) as of February 3, 2026, "ERO is still waiting on the issuance of a travel document for Petitioner."  [doc. #s 16; 16-1].  Respondents conclude: "Efforts to remove Petitioner continue and, because his travel document request has been submitted, his removal is likely to occur in the reasonably foreseeable future."  [doc. # 16, pp. 1-2].

<u>**Law and Analysis**</u>

**I. Overstay in Detention**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . .  or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to

3

believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. In addition, he meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. After his order of removal became final, he has been detained since at least March 25, 2025, yet for approximately 317 days (or 10 months, 11 days) to date, the Government has been unable to obtain a travel document for him despite multiple attempts and despite Petitioner's full cooperation. He also suggests that China is unlikely to ever issue a travel document for him because he fled China "without permission almost 40 years ago[.]" He likewise suggests that considering he left China forty years ago, he no longer has original identity documents, which China allegedly requires without exception before it will allow him to enter the country.

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Respondents do not rebut Petitioner's showing.  They do not provide any evidence indicating that travel documents are forthcoming, that ICE has made meaningful progress in effectuating Petitioner's removal, or that Petitioner has not fully cooperated with ICE.

As above, Respondents provide evidence demonstrating: ERO submitted a travel document request on May 30, 2025; on June 27, 2025, ERO "requested an update"; on November 21, 2025, ERO requested an update; and as of February 3, 2026, "ERO is still waiting . . . ." [doc. #s 16, 16-1].  Respondents conclude: "because his travel document request has been submitted, his removal is likely to occur in the reasonably foreseeable future."  [doc. # 16, pp. 1-2].

Respondents' conclusion, however, is a non sequitur.  That a travel document request was submitted does not establish that Petitioner's removal is significantly likely to occur in the reasonably foreseeable future.  Travel document requests can, for instance, be denied, ignored, or processed in the distant future.  Further, that Respondents have not obtained a travel document following the request submitted over eight months ago suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  There is no evidence that Chinese officials have even received, reviewed, or responded to the travel document request.  Respondents essentially present a request for a travel document followed by no indication of progress in over eight months and no indication that progress will occur.

ERO's requests for updates on the travel document request, while indicative of some effort, essentially constitute the question, has there been any progress?  After eight months with no material response, the answer appears to be, no.  The longer a request for travel documents

5

remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.[4]

Courts in this District have held that the Government's burden to furnish evidence demonstrating that removal is significantly likely in the reasonably foreseeable future is not met by a pending request for travel documents alone. *See, e.g., Johnson v. Young*, 2013 WL 1571938, at \*2 (W.D. La. Feb. 11, 2013), *report and recommendation adopted,* 2013 WL 1571272 (W.D. La. Apr. 12, 2013) (finding the argument that the Jamaican consulate had not yet refused to issue travel documents insufficient to meet the government's burden); *Fermine v. Dir. of Immigr. & Customs Enf't*, 2007 WL 2284606, at \*4 (W.D. La. May 23, 2007); (finding no significant likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document and Trinidad had not yet refused the request).

Moreover, Respondents do not present any evidence to rebut Petitioner's arguments that (i) China is unlikely to ever issue a travel document for him because he fled China "without permission almost 40 years ago" and (ii) that considering he left China forty years ago, he no longer has the required original identity documents to enter China. While Petitioner does not present his own evidence to support these arguments, he could always testify to some or all of the above (to the extent he is not constrained by the applicable evidentiary rules).

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[5] They do not, for example, provide any evidence that they have made progress in

---

[4] *See also Islam v. Kane*, 2011 WL 4374226, at \*3 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("The period of Petitioner's post-removal-order detention is nearing twelve months, thus the 'reasonably foreseeable future' must be near.").

[5] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at \*3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal

obtaining travel documents, that they have been communicating with China about Petitioner's

deportation, that China has recently accepted other deportees similarly situated to Petitioner, that

China has an agreement or treaty with the United States affecting Petitioner's removal, or that

China is willing to accept Petitioner.[6]   In fact, Respondents' counsel concedes that she lacks

"information from Respondents regarding specific efforts being taken to execute Petitioner's

removal."[7]  [doc. # 7, p. 5].  And as Petitioner rhetorically replies: "Respondents cannot even

state whether specific efforts are being made at the moment, if any, yet insist detention is

appropriate for the presumed efforts to continue, despite no action, or even update, on the alleged

request for travel documents in the last 10 months."  [doc. # 12, pp. 8-9].

---

or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam,* 2011 WL 4374226, at *3 ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[6] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[7] While not dispositive, the undersigned also finds persuasive that Respondents had over twenty-two years to try and remove Petitioner after his removal order became final, yet they waited until March 2025 to detain him and finally *attempt* (futilely, to date) to remove him.

Respondents contend: "This Petition should be dismissed, like the petitions in the above-cited *Fahim v. Ashcroft* and *Nagib v. Gonzales*. In both cases, courts found that the aliens had not met their burdens because the only evidence of a good reason to believe there was no significant likelihood of a reasonably foreseeable removal was the time in detention and the assertion that the receiving country had not yet issued travel documents." [doc. # 7, p. 4]. The undersigned expresses no agreement or disagreement with the disposition of those cases, but it suffices that they are materially distinguishable. In *Fahim*, unlike here, the Government " sent an emergency travel document request to the Egyptian Embassy[,]" it flew "petitioner to the Egyptian Embassy . . . for an interview to try to move along the process" three months before he filed his habeas corpus petition, and the petitioner also had a "passport that would facilitate his return to Egypt" which he failed to produce. *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1362 (N.D. Ga. 2002). In *Nagib*, ICE had "formally requested travel documents" from the Sudanese Embassy, the embassy later advised a deportation officer that his travel document request was still pending, and the Sudanese government had in the past issued travel documents to Sudanese citizens. *Nagib v. Gonzales*, 2006 WL 1499682, at *2 (N.D. Tex. May 31, 2006).

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might

8

occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[8]

## II. Conditions of Confinement and Medical Care

Petitioner challenges the conditions of his confinement at JPCC and the quality of his medical care.

"Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose. While it is correctly alluded to as the Great Writ, it cannot be utilized as . . . a springboard to adjudicate matters foreign to the question of the legality of custody." *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).

"Allegations that challenge the fact or duration of confinement are properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007). "A § 2241 habeas petition is the proper procedural vehicle for challenging an action that 'directly implicates the duration of' a prisoner's

---

[8] The undersigned finds no need to address any claim or challenge not addressed herein. In addition, while Petitioner requests attorney's fees under the Equal Access to Justice Act, he has no counsel and, even if he did, recovery of attorney fees is not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).

confinement.  *Davis v. Fechtel*, 150 F.3d 486, 487, 490 (5th Cir. 1998).  It is not, however, the proper procedural vehicle for claims . . . regarding the conditions of confinement."  *Boyle v. Wilson*, 814 F. App'x 881, 882 (5th Cir. 2020).[9]

In *Moore v. King*, No. 08-60164, 2009 WL 122555, at *1 (5th Cir. Jan. 20, 2009), for instance, the petitioner sought habeas relief, challenging the conditions of his confinement.  The court affirmed the dismissal of his claim, citing *Pierre* for the rule that habeas is simply not available.

Likewise, challenges concerning medical care are not cognizable here.  *See Mora v. Warden, Fed. Corr. Complex, Yazoo City Medium*, 480 F. App'x 779, 780 (5th Cir. 2012) (affirming dismissal of a 2241 petition as "not cognizable" because it related to the petitioner's "medical needs, and a determination in his favor would not result in his accelerated release"); *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009) ("[T]he district court found it could not grant her relief pursuant to Section 2241 because her application was 'not in reference to the imposed sentence—but for medical needs.' We agree."); *McBarron v. Jeter*, 243 F. App'x 857, 857 (5th Cir. 2007); *Watson v. Briscoe*, 554 F.2d 650, 652 (5th Cir. 1977).

These claims are unrelated to the cause of Petitioner's detention.  The Court should dismiss them.[10]

---

[9] *See Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) ("[A] habeas petition 'is the proper vehicle to seek release from custody,' while a civil rights suit pursuant to 42 U.S.C. § 1983 for a state prisoner or under *Bivens* for a federal prisoner is 'the proper vehicle to attack unconstitutional conditions of confinement and prison procedures.'") (quoting *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997)).

[10] If Petitioner wants to pursue a civil rights action, he must file a separate proceeding, utilizing the appropriate complaint form.  Petitioner should be aware that to file a separate civil rights proceeding, he must either pay the required filing fee or submit a properly executed application to proceed in forma pauperis.  Petitioner is advised that the cost of litigating a civil rights complaint pursuant to Section 1983 is significantly higher than the cost of litigating a habeas

**<u>Conclusion</u>**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Jiqin Yang's petition for habeas corpus be **GRANTED**: Respondents, including the Warden of Jackson Parish Correctional Center, shall (A) immediately release Petitioner from custody without bond under reasonable conditions of supervision to be established by an ICE deportation officer and (B) if Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[11]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

**IT IS FURTHER RECOMMENDED** that Petitioner's claims concerning his conditions of confinement and medical care be **DISMISSED WITH PREJUDICE** here but **WITHOUT PREJUDICE** to his right to raise them in a separate civil rights action.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

---

corpus petition. Petitioner should likewise be aware that he must exhaust all available administrative remedies before pursuing relief in this Court for his claims concerning his conditions of confinement and medical care.

[11] In other words, it is the intent of the Court that Petitioner should not be released only to be immediately taken back into custody. The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 6th day of February, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge